UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 30 2019 ★

**LIVERPOOL,**

BROOKLYN OFFICE

Plaintiff,

-against-

**MEMORANDUM AND ORDER**
17-CV-1995 (AMD) (JO)

**CLEVELAND,** *et al.*,

Defendants.
------------------------------------------------------------X

**ANN M. DONNELLY**, District Judge:

The *pro se* plaintiff brought this 42 U.S.C. § 1983 action against New York Police Department School Safety Agents (SSA) Michael Merritt, Josif Balan, JA Rampersant, Reggie Cleveland, and Officers Jose Mercado, Edward Reiman, and Julio Apolinaris, alleging civil rights violations. (ECF Nos. 2, 46.) On November 21, 2018, the defendants moved for summary judgment, and on August 23, 2019, the plaintiff opposed the motion. (ECF Nos. 79, 100.) For the reasons that follow, the defendants' motion is granted.

## BACKGROUND

On October 15, 2014, Officers Cleveland, Merritt, Rampersant, and Balan arrested the plaintiff. (ECF Nos. 80 ¶¶ 12-13, 100 at 4-5.) The parties agree for the most part about what happened after the plaintiff's arrest, but disagree about what led to the arrest.

According to the plaintiff, sometime on the morning of October 15, 2014, he was walking along the George Street side of Intermediate School (IS) 77 towards Myrtle Avenue in Queens, New York. (ECF No. 100 at 4; ECF No. 107-1 at 94-95.) After he turned onto Myrtle Avenue, Officer Mercado stopped him and asked "if [he] had been exposing himself in the area." (ECF No. 100 at 4.) The plaintiff said he had not, and continued walking. (*Id.*) A few minutes later,

1

SSA Cleveland and three other SSAs arrived in a school safety van and surrounded the plaintiff. (ECF No. 100 at 5; ECF No. 107-1 at 103-104, 108-10.) SSA Cleveland arrested the plaintiff. (ECF No. 100 at 5; ECF No. 107-1 at 108-110.)

According to the plaintiff, the officers used "unnecessary force" during the arrest; SSA Cleveland twice "shoved" the plaintiff into a parked van and "aggressively" handcuffed him so tightly that his wrists hurt. (ECF No. 2 at 3; ECF No. 46 at 6; ECF No. 100 at 4, 5; ECF No. 107-1 at 109-112.) He complained about the handcuffs to SSA Cleveland "in the presence of" all the officers, but SSA Cleveland "refused to adjust (loosen) plaintiff's handcuffs." (ECF No. 100 at 5; *see also* ECF No. 107-1 at 114-16.) After the arrest, the plaintiff's wrists were swollen, with painful "indents." (ECF No. 2 at 3.)

According to the defendants, SSA Cleveland was on duty at IS 77 at around 9 or 9:30 am on October 15, 2014, when he saw the plaintiff walking along the perimeter of the school "with his hand down the front of his pants making a rapid up and down jerking motion." (ECF No. 80 ¶¶ 3, 4; ECF No. 107-7 at 5-6.) SSA Cleveland checked the IS 77 surveillance cameras, but did not find any helpful footage.[1] (ECF No. 80 ¶ 7, 8.) SSA Cleveland joined SSA Rampersant, Merritt and Balan, who were in a van outside the school and told them what happened. (*Id.* ¶ 8; ECF No. 107-3 at 16.) They went to look for the plaintiff and saw him walking near Cornelia Street and Cypress Avenue. (ECF No. 80 ¶¶ 9, 12, 13; ECF No. 107-3 at 16.) SSA Cleveland identified the plaintiff as the person he had seen near the school earlier.[2] (ECF No. 80 ¶ 11; ECF No. 107-3 at 29-30.) The SSAs got out of the van, stopped the plaintiff, and SSA Cleveland

---

[1] As the plaintiff points out, there are no surveillance videos in the record. SSA Cleveland testified at his deposition that the cameras were operative and facing the street where SSA Cleveland saw the plaintiff, but there was no video footage of the plaintiff. (ECF No. 107-7 at 11-12.)

[2] The plaintiff also "matched the description [SSA Cleveland] had given to the task force upon approaching the task force van." (ECF No. 80 ¶ 11; ECF No. 107-3 at 29-30.)

2

handcuffed him and put him in the van. (ECF No. 80 ¶¶ 12, 13; ECF No. 107-7 at 22.) The SSAs did not see SSA Cleveland shove the plaintiff or hear the plaintiff say that his handcuffs were too tight. (ECF No. 107-3 at 14; ECF No. 107-4 at 20.) SSA Cleveland testified that the only time he touched the plaintiff was to handcuff him; he denied shoving the plaintiff or hearing him complain about his handcuffs. (ECF No. 107-7 at 20-21.)

It is undisputed that Officer Mercado arrived after the plaintiff was handcuffed. (ECF No. 80 ¶¶ 14, 16; ECF No. 100 at 1-5.) The SSAs took the plaintiff to the 104th Precinct in one vehicle, and Officer Mercado drove in another. (ECF No. 80 ¶¶ 17, 18; ECF No. 100 at 3; ECF No. 107-4 at 25-26.) Officer Mercado arrived at the 104th Precinct first and told Sergeant Reimer[3] that the SSAs were transporting the plaintiff there. (ECF No. 107-4 at 25-26.) Sergeant Reimer knew that officers had arrested someone for "exposing" himself near a school and were bringing him to the precinct, but did not remember who gave him the information. (ECF No. 100 at 3; 107-2 at 12-14.) Aside from seeing the plaintiff at the precinct, the sergeant had no other contact with him. (ECF No. 107-2 at 35-36.)

The plaintiff was processed at the 104th Precinct and then taken to Central Booking in the evening of October 15, 2014. (ECF No. 80 ¶¶ 19, 21; ECF No. 100 at 3.) He did not request medical attention at the 104th Precinct, but medical staff at Central Booking saw him "as part of routine processing." (ECF No. 80 ¶¶ 20, 22; ECF No. 100 at 3.)

The parties dispute what happened when the plaintiff saw Central Booking medical staff, but agree that the plaintiff refused aspirin and did not ask to go to a hospital.[4] (ECF No. 80

---

[3] It is undisputed that Sergeant Reimer was at the 104th Precinct during the plaintiff's arrest, and not involved in anything that happened to the plaintiff outside the precinct. (ECF No. 100 at 10-11; *see generally* ECF No. 107-2.) Even the plaintiff agrees that Sergeant Reimer was acting only as a supervising officer for school-related crimes and did not have any interaction with the plaintiff. (ECF No. 100 at 10-11.)

[4] In his 56.1 response, the plaintiff says that he was in pain, but refused aspirin because it makes him nauseous. (ECF No. 100 at 3.)

3

¶¶ 23, 24; ECF No 100 at 3.) The plaintiff says that he told medical staff that SSA Cleveland pushed him, causing him back pain, and handcuffed him too tightly, hurting his wrist. (ECF No. 107-1 at 43-44, 130-32.) He also showed them the "rings" around his wrists from the pressure of the handcuffs. (*Id.*) The defendants say that the plaintiff told medical staff he was not injured. (ECF No. 80 ¶ 23.)

At some point, the plaintiff was transported to Rikers Island. (ECF No. 80 ¶ 25; ECF No. 100 at 3.) At his deposition, the plaintiff said that he did not receive medical treatment at Rikers; in his response to the defendants' 56.1 statement, however, he said that he went to the Rikers clinic for wrist and back pain. (ECF No. 100 at 3; ECF No. 107-1 at 45.) He testified that by the time he got to Rikers, the marks on his wrist were gone. (ECF No. 107-1 at 132.) The plaintiff said that his wrist hurt for "a few days" after his arrest, but no longer bothers him. (ECF No. 107-1 at 44.) The plaintiff did not seek or receive medical treatment after he was released from Rikers. (ECF No. 107-1 at 45.)

The plaintiff was arraigned on October 15, 2014, and charged with violating New York Penal Law § 245.00, Public Lewdness. (ECF No. 80 ¶ 26; ECF No. 100 at 3.) According to the plaintiff, he spent 60 days in jail in unsanitary conditions, in "holding cells which had inoperable toilets and sinks filled with human waste." (*See* ECF No. 2 at 3; ECF No. 46 at 6; ECF No. 100 at 6.) He also says he was uncomfortable and in pain from being "handcuffed and shackled approximately four to six times" on his way to and from court. (ECF No. 2 at 4.) The charge against the plaintiff was dismissed in the interest of justice on November 12, 2014. (ECF No. 80 ¶ 27; ECF No. 100 at 3; ECF No. 107-1 at 136.) After the plaintiff was released from custody, he returned to his apartment to find that someone had broken in and stolen his belongings. (ECF No. 80 ¶ 28; ECF No. 100 at 3; ECF No. 107-1 at 50.)

4

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" for the purposes of summary judgment when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See McLee*, 109 F.3d at 134; *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). Because the defendants are moving for summary judgment, I draw all reasonable inferences in the plaintiff's favor. In addition, because the plaintiff is proceeding *pro se*, I construe his filings liberally, and "interpret them to raise the strongest arguments that they suggest." *McPherson*, 174 F.3d at 280 (citations omitted).

## DISCUSSION

I interpret the plaintiff's complaint and amended complaint to raise claims for false arrest, malicious prosecution, excessive force, failure to intervene, and unconstitutional conditions of confinement.[5]

As an initial matter, it is undisputed that defendant Officer Apolinaris was not near Cornelia Street and Cypress Avenue on October 15, 2014, and was not otherwise involved in the plaintiff's arrest or criminal prosecution. (ECF No. 80. ¶ 15; ECF No. 100 at 2; ECF No. 107-5 at 4-5.) The plaintiff does not remember Officer Apolinaris playing a role in the arrest, and does not claim that Officer Apolinaris was personally involved in the allegations in the amended complaint. (*See* ECF Nos. 46, 100.) Accordingly, all claims against Officer Apolinaris are dismissed.

*False Arrest and Malicious Prosecution*

The plaintiff argues that he did not expose himself or make any lewd gestures in public and that SSA Cleveland concocted a "false narrative" to justify the arrest. (*See, e.g.*, ECF No. 100 at 9.) He asserts that the other SSAs and officers relied on SSA Cleveland's representation that the plaintiff was "fondling himself" near IS 77. (ECF No. 46 at 5; ECF No. 100 at 9, 11.) The plaintiff also says that he spent "a considerable amount of days incarcerated" because of the "fabricated" and "unsubstantiated" charge. (ECF No. 46 at 5; ECF No. 100 at 12.) I interpret these allegations to raise claims of false arrest and malicious prosecution.

In order to state a false arrest or malicious prosecution claim pursuant to Section 1983, the plaintiff must establish that he was deprived of his Fourth Amendment rights and must

---

[5] Although the plaintiff refers to the break-in at his apartment, he does not allege that the defendants were involved in it. (ECF No. 80 ¶ 28; ECF No. 100 at 3; ECF No. 107-1 at 50.) Accordingly, I do not interpret the reference to raise a federal claim.

establish the elements of each claim. *See Fulton v. Robinson*, 289 F.3d 188, 195-96 (2d Cir. 2002); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). For false arrest, the plaintiff must allege that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To establish a claim for malicious prosecution, the plaintiff must show: (1) the initiation of an action by the defendant against the plaintiff, (2) that the defendant acted with malice, (3) that the defendant did not have probable cause, and (4) that the action ended in the plaintiff's favor.[6] *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (internal citations omitted).

Probable cause "is a complete defense" to claims for false arrest and malicious prosecution. *Weyant*, 101 F.3d at 852; *Fulton*, 289 F.3d at 196; *Singer*, 63 F.3d at 118; *see also Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("Thus, under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."). A court may decide the question of probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Jenkins*, 478 F.3d at 88.

Probable cause requires an officer to have "knowledge or reasonably trustworthy

---

[6] The plaintiff did not sufficiently allege that the resolution of the charges against him — a dismissal in the interest of justice — was a "favorable" termination, which is an independent reason for dismissing this claim. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28-29 (2d Cir. 2018) ("As we have explained in discussing 'the constitutional tort of malicious prosecution in an action pursuant to § 1983,' where a dismissal in the interest of justice 'leaves the question of guilt or innocence unanswered[,] ... it cannot provide the favorable termination required as the basis for [that] claim.'") (internal citations omitted); *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) ("Similarly, dismissals by the prosecution 'in the interests of justice'... are generally considered not to be dispositions in favor of the accused.").

information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). In deciding whether an officer had probable cause to arrest, the court will "consider th[e] facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Police officers are "entitled to rely on the allegations of fellow police officers" in deciding whether they have probable cause to arrest. *Martinez*, 202 F.3d at 634. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Wieder v. City of N.Y.*, 569 F. App'x 28, 29–30 (2d Cir. 2014) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *see also Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.").

SSA Cleveland's observation of the plaintiff moving his hand up and down inside his pants, outside a school, gave the officer probable cause to arrest the plaintiff for public lewdness.[7] Based on what he saw, SSA Cleveland concluded that the plaintiff was masturbating on a public sidewalk and reported what he saw to the other SSAs, who then accompanied him to arrest the plaintiff. The plaintiff does not deny that SSA Cleveland saw him make a "concealed

---

[7] "A person is guilty of public lewdness when he or she intentionally exposes the private or intimate parts of his or her body in a lewd manner or commits any other lewd act... in a public place." N.Y. Penal Law § 245.00. "[T]he New York Court of Appeals has concluded that a location 'is a 'public place' for purposes of this subdivision where the objective circumstances establish that lewd acts committed there can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect.'" *United States v. Thomas*, 633 F. App'x 54, 54 (2d Cir. 2016) (quoting *People v. McNamara*, 78 N.Y.2d 626, 633–34 (1991)). "Intent to be observed is not a required element of public lewdness under § 245.00(a)." *Powell v. Murphy*, 593 F. App'x 25, 27 (2d Cir. 2014) ("Thus, even viewing the record in the light most favorable to Powell, we conclude that the district court properly awarded summary judgment in favor of defendants on Powell's false arrest claim.").

hand movement." (*See* ECF No. 100 at 14.) Instead, he argues that SSA Cleveland did not have probable cause because he did not see the plaintiff's exposed penis. But that is not a necessary pre-condition for concluding that the plaintiff was committing an act of public lewdness. The officer saw the plaintiff near a school, moving his hand up and down in his pants. That established probable cause to arrest the plaintiff for public lewdness[8] and both the false arrest and malicious prosecution claims must be dismissed.[9] *See Powell v. Murphy*, 593 F. App'x at 27 (district court properly awarded summary judgment to defendants on false arrest claim because there was probable cause to arrest plaintiff for masturbating in a van, in view of complainant's porch); *Bishop*, 518 Fed. App'x. at 56; *see also Fulton*, 289 F.3d at 195-96.

Because the SSAs had probable cause to arrest the plaintiff, they obviously had arguable probable cause to arrest, and are therefore entitled to qualified immunity from the false arrest claim. *See Kass v. City of New York*, 864 F.3d 200, 206, 213-14 (2d Cir. 2017) (dismissing false arrest claims, and holding "an officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged.").

*Excessive Force*

The plaintiff asserts that SSA Cleveland used unreasonable force during the arrest by

---

[8] Nor does the absence of video evidence raise a material dispute of fact. The focus of the probable cause inquiry is on what the officer knew at the time of the arrest, and how a reasonable officer would view the plaintiff's actions. *See Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 71 (2d Cir. 2018) ("[O]ur focus is not on [the plaintiff's] motivations but instead on the sequence of events from the perspective of a reasonable officer at the scene." (quoting *Tracy v. Freshwater*, 623 F.3d 90, 97 (2d Cir. 2010))).

[9] While it is true that probable cause can defeat a false arrest claim but not a malicious prosecution claim — because probable cause sufficient to charge a crime is distinct from probable cause needed to arrest — "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *amended* (May 21, 1996) (citing *Callan v. State*, 73 N.Y.2d 731 (1988)). There were no intervening facts from which the officers could have concluded that the probable cause "dissipated" and that they lacked probable cause to charge the plaintiff with a crime. *See id.*

1) twice shoving him against a van and 2) handcuffing him tightly, injuring his wrist.

The Fourth Amendment prohibits the use of unreasonable and excessive force during an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010). Because the test is one of "objective reasonableness," the inquiry is fact specific. *Id.* (citing *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005)); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989). The record must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (quoting *Tracy*, 623 F.3d at 96).

Officers may use reasonable force to effect an arrest. *See, e.g., Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (officers' actions were reasonable and not excessive where "to effect the arrest, officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist"). Whether the force used in connection with an arrest is reasonable depends on a "careful weighing of the facts of each particular case, including whether the suspect poses a threat, resists, or attempts to evade arrest, and the severity of the crime at issue." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. at 396). "Not every push or shove" violates the Fourth Amendment, "even if it may later seem unnecessary in the peace of a judge's chambers." *Graham*, 490 U.S. at 396 (internal citations omitted).

The plaintiff says that SSA Cleveland twice shoved him against a van, causing him temporary back pain. None of the officers at the scene of the plaintiff's arrest saw SSA Cleveland do anything other than handcuff the plaintiff. Nor does the plaintiff allege that he had lasting injuries from the shove; temporary back and wrist pain are "de minimus" injuries and are

10

insufficient to sustain an excessive force claim. *See Mesa,* 2013 WL 31002, at *18 ("[W]here a plaintiff suffers from de minimis injury, it is more difficult to establish that the force used was excessive in nature."); *Lemmo v. McKoy,* No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising,… brief numbness from tight handcuffing,… claims of minor discomfort from tight handcuffing,… and two superficial scratches with a cut inside the mouth.") (collecting cases); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995) (officer forcibly removed arrestee from car and injured her wrist: "[N]o rational jury could have found that the force used was so excessive that no reasonable officer would have made the same choice."). Therefore, even taking the facts in the light most favorable to the plaintiff, SSA Cleveland's actions "cannot be held objectively unreasonable." *McKenzie v. City of New York,* No. 17-CV-4899, 2019 WL 3288267, at *10 (S.D.N.Y. July 22, 2019) (holding that pulling plaintiff out of his car and shoving him against side of a car, did not, "without more, establish that the officers used excessive force against him, let alone that an officer on the scene would recognize such actions as unreasonable").

The reasonableness of the force used to handcuff the plaintiff must be weighed against the minimal force needed to keep him in custody, including whether he was resisting arrest. *Esmont,* 371 F. Supp. 2d at 214–15. In evaluating reasonableness, the Court considers evidence that 1) the handcuffs were unreasonably tight and 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight, and 3) the degree of injury to the wrists. *Id.*; *Pelayo v. Port Auth.,* 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012).

The plaintiff testified that SSA Cleveland handcuffed him so tightly that his wrists hurt, and that he complained to SSA Cleveland in front of other officers. The defendants deny hearing

the plaintiff complain. Because I must resolve ambiguities in favor of the non-movant — the plaintiff — I assume for the purposes of this motion that the plaintiff's handcuffs were too tight and he complained about them to one or more of the defendants. However, there is insufficient evidence in the record that the plaintiff's injuries as a result of being handcuffed were serious enough to make out an excessive force claim. *See McKenzie*, 2019 WL 3288267, at *9 ("When a plaintiff suffers only a de minimis injury, including from handcuffing, it is harder for the plaintiff to establish that the force used was excessive.") (collecting cases); *Esmont*, 371 F. Supp. 2d at 214–15 ("Placing handcuffs on an arrestee tight enough to cause nerve damage may… constitute excessive force in violation of the Fourth Amendment.") (collecting cases).

Other than the plaintiff's testimony, there is no evidence that the plaintiff sought or received treatment for injuries to his wrists. While I credit the plaintiff's assertion that he saw medical professionals at Central Booking and Rikers, I also credit his testimony that his wrist pain went away after a few days, and that he had no lasting injuries. Accordingly, I grant summary judgment to the defendants on the plaintiff's excessive force claim. *See, e.g., Esmont*, 371 F. Supp. 2d at 214–15; *cf Pelayo*, 893 F. Supp. 2d at 642-43 (denying summary judgment to defendants because plaintiff complained about tight handcuffs and raised sufficient questions of material fact about torn cartilage to his wrist resulting from handcuffing).

*Failure to Intervene*

The plaintiff alleges that the defendants — excluding SSA Cleveland — knew that there was no probable cause to arrest the plaintiff, but followed SSA Cleveland's orders to arrest the plaintiff anyway. (ECF No. 100 at 14-15.) He also argues that the defendants "witnessed one of their own" use excessive force against him without cause. (ECF No. 46 at 5.)

A police officer "has an affirmative duty to intercede on the behalf of a citizen whose

constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability, so long as the plaintiff "overcome[s] the hurdle of qualified immunity." *Ricciuti*, 124 F.3d at 129 (citing *O'Neill*, 839 F.2d at 11). "To obtain summary judgment on qualified immunity grounds in connection with a claim of failure to intercede to prevent an illegal arrest, a defendant must show that the only result a fair jury could reach is that reasonably competent police officers, faced with the information available to the non-intervening officer at the time of the arrest, could disagree about the legality of the arrest." *Ricciuti*, 124 F.3d at 129 (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).

For the reasons explained above, the defendants had probable cause to arrest the plaintiff, and reasonable officers would not disagree about the legality of the plaintiff's arrest. *See Simcoe v. Gray*, 670 F. App'x 725, 727 (2d Cir. 2016) ("[A]bsent a constitutional violation on the part of any of the officers, Simcoe's failure-to-intervene claim necessarily fails."); *Williams v. City of New York*, No. 16-CV-01904, 2019 WL 2716169, at *3 (E.D.N.Y. June 28, 2019) ("Because there was probable cause to arrest Williams, his claim for failure to intervene necessarily fails, as well.") Therefore, the defendants' motion for summary judgment on the plaintiff's failure to intervene claim is granted on the basis of qualified immunity.

*Unconstitutional Conditions of Confinement*

The plaintiff alleges that he was "subject to confinement in unsanitary holding cells which had inoperable toilets and sinks filled with human waste." (ECF No. 2 at 3.) He repeats similar allegations in the amended complaint and his response to the defendants' summary judgment motion. (*See* ECF No. 46 at 6; ECF No. 100 at 6.) I interpret this claim as a 42 U.S.C. § 1983 claim for unconstitutional conditions of confinement under the Fourteenth Amendment.

13

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the defendants were personally involved in the constitutional violation, failed to remedy the violation after learning of it, created a custom or policy fostering the violation, or were grossly negligent in supervising subordinates. *See Mabery v. Keane*, No. 95-CV-1093, 1998 WL 148386, at *3 (S.D.N.Y. Mar. 30, 1998) (finding there were no facts in the complaint establishing the personal involvement of defendants in unsanitary prison conditions); *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *12 (E.D.N.Y. Aug. 20, 2014); *see also Walker v. Schult*, 717 F.3d 119, 123 n.4 (2d Cir. 2013) (affirming dismissal of claims against two defendants because plaintiff did not assert that they were personally involved in the alleged constitutional violations).

The plaintiff does not specify at which facility he experienced the unsanitary conditions, nor does he plead any facts from which I can conclude that the defendants were personally involved in creating unsanitary conditions in the 104th Precinct, Central Booking, or Rikers. He does not assert that he brought the conditions to the defendants' attention or complained about them to anyone. On this record, I cannot conclude that the defendants knew about the unsanitary conditions the plaintiff described, or that they were personally involved a constitutional violation. Accordingly, the plaintiff does not state a claim against the defendants for a Fourteenth Amendment violation, and any such claim must be dismissed. *See Reid*, 2014 WL 4185195, at *12 ("A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law."); *Gonzalez v. Hasty*, 755 F. App'x 67, 72 (2d Cir. 2018) (affirming dismissal of Eighth Amendment unsanitary conditions claim because the plaintiff did not produce "evidence that any of the individual defendants had specific knowledge of the alleged constitutional violations at

issue"); *see also Mabery*, 1998 WL 148386, at *3.

## CONCLUSION

The defendants' motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                        _____
                                        Ann M. Donnelly
                                        United States District Judge

Dated: Brooklyn, New York
       September 30, 2019